# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | NO. 3:18-cr-00275 |
| v. ) | |
| ) | JUDGE CAMPBELL |
| ADRIAN ABERNATHY ) | |

## MEMORANDUM AND ORDER

Pending before the Court are Defendant's *pro se* request for compassionate release (Doc. No. 89), and the Government's Response in opposition (Doc. No. 91, 93). For the reasons set forth below, Defendant's request for compassionate release (Doc. Nos. 89) is **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant pled guilty, pursuant to a Plea Agreement, to possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1) (a lesser included offense of Count One). (Doc. No. 69). Through the Plea Agreement, the parties agreed to a sentence of 24 months of imprisonment, and the Government agreed to dismiss Count Two charging possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). (*Id.*) At the subsequent sentencing hearing, on November 22, 2019, the Court imposed the agreed 24-month sentence. (Doc. Nos. 80, 81).

Defendant's pending request references the COVID-19 coronavirus pandemic. The COVID-19 coronavirus pandemic has been declared a national public health emergency.[1] As of

---

[1] *See Renewal of Determination that a Public Health Emergency Exists*, www.phe.gov/emergency/news/healthactions/phe/Pages/covid-19-2Oct2020.aspx (renewing, effective Oct. 23, 2020, determination that a nationwide public health emergency exists due to the COVID-19 pandemic and has existed since January 27, 2020) (last visited Dec. 28, 2020).

December 28, 2020, COVID-19 had killed more than 330,000 Americans and infected over 18 million.[2] The Centers for Disease Control and Prevention ("CDC") advises that individuals with certain underlying health conditions and older adults are at an increased risk for severe illness and death if they contract the virus.[3] The CDC defines "severe illness" as hospitalization, admission to the ICU, intubation or mechanical ventilation, or death.[4] According to the CDC, "[t]he best way to prevent illness is to avoid being exposed to the virus."[5]

## II. STANDARD OF REVIEW

In December 2018, Congress passed the First Step Act, Section 603 of which transformed the process for compassionate release under § 3582(c)(1)(A) to allow prisoners to directly petition courts. Until this amendment, compassionate release motions could only be brought by the Director of the Bureau of Prisons, an option that was infrequently exercised.[6] The compassionate release statute now states in relevant part:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all

---

[2] *CDC, COVID Data Tracker*, http://covid.cdc.gov/covid-data-tracker (last visited on Dec. 28, 2020).

[3] CDC, *People Who Are at Increased Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (last visited Dec. 28, 2020).

[4] CDC, *Evidence Used to Update the List of Underlying Medical Conditions That Increase a Person's Risk of Severe Illness from COVID-19*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/evidence-table.html (last visited on Dec. 28, 2020).

[5] CDC, *How COVID-19 Spreads*, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html. (last visited Dec. 28, 2020).

[6] The first year after passage of the First Step Act, 145 offenders were granted compassionate release under 18 U.S.C. § 3582(c)(1)(A), a five-fold increase from fiscal year 2018, during which 24 compassionate release motions were granted. *See* United States Sentencing Commission, The First Step Act of 2018: One Year of Implementation, 46-49 (Aug. 31, 2020); *United States v. Jones,* 980 F.3d 1098, 1101 n.1 & 1105 (6th Cir. 2020). Of the motions granted during the first year, 96 were filed by the offender. *Id*.

> administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction…
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission;

18 U.S.C. § 3582(c)(1)(A).

The requirement that a prisoner exhaust administrative rights to appeal or wait 30 days after the first request to the prison is a mandatory claims-processing rule. *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020). In *Alam,* the Sixth Circuit considered the exhaustion requirement in the context of the unique circumstances presented by the COVID-19 pandemic and concluded that exhaustion "operates as an 'unyielding procedural requirement[]'" and is not subject to equitable exceptions. *Id*., at 834. If a prisoner fails to comply with the exhaustion requirement, the *Alam* Court instructed that district courts should dismiss the prisoner's request for compassionate release without prejudice. *Id*.

Once the exhaustion requirement is satisfied, district courts in the Sixth Circuit are to evaluate the merits of a request for compassionate release by applying a three-step test. *United States v. Jones*, 980 F.3d 1098, 1105-08 (6th Cir. 2020). "At step one, a court must 'find[]' whether 'extraordinary and compelling reasons warrant' a sentence reduction." *Id*., at 1107-08. Step two requires the court to "'find[]' whether 'such a reduction is consistent with *applicable* policy statements issued by the Sentencing Commission.'" *Id*., at 1108. At step three, the court must

3

consider "any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *Id*.

In *Jones*, the Sixth Circuit also addressed the issue of whether the district court, as part of step two, should have applied Sentencing Guideline Section 1B1.13 ("Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)"), which was promulgated in 2006. *Id.,* at 1108-11. The court pointed out that, since the First Step Act was enacted in 2018, the Sentencing Commission has not amended the policy statement and, as currently worded, the existing policy statement applies only to motions filed by the BOP. *Id*. Finding the existing policy statement "inapplicable" to cases filed by an imprisoned person, *Jones* instructs that in considering such a filing, a court may "skip" step two of the inquiry and has "full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Id*., at 1111.

### III. ANALYSIS

As an initial matter, the Court concludes that Defendant has met the exhaustion requirement of Section 3582(c)(1)(A). Defendant has attached his request to the Warden of the facility where he is housed, dated March 29, 2020, requesting compassion release (Doc. No. 89, at 6), and the Government does not contest that he has exhausted administrative remedies. (Doc. No. 91, at 9).

Through his filings, Defendant presents the following basis for his request for compassionate release. Defendant is 27 years old and is currently housed at McCreary USP in Kentucky. He has served approximately 75% of his 24-month sentence, and his projected release date is June 6, 2021. Defendant states that he suffers from chronic asthma, and bronchitis.

4

According to the CDC, people with chronic bronchitis *are* at an increased risk for severe illness if they contract COVID-19, and those with moderate to severe asthma *may* be at an increased risk for severe illness if they contract COVID-19. (https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 2, 2021)). According to Defendant, there has been a recent outbreak of COVID cases at McCreary USP.[7] Defendant contends the higher risk of developing serious complications if he contracts the virus constitutes "extraordinary and compelling reasons" for the Court to grant compassionate release.

Relying on Defendant's BOP medical records (Doc. No. 93), the Government disputes that Defendant suffers from severe asthma and bronchitis, and argues that the BOP has made great efforts to maintain the safety of inmates.

For purposes of Defendant's request, the Court will assume he has demonstrated "extraordinary and compelling reasons" for compassionate release. As instructed by *Jones,* therefore, the Court will proceed to step three – consideration of the Section 3553(a) factors to determine if release is appropriate.

Section 3553(a) requires the Court to "impose a sentence sufficient, but not greater than necessary" to comply with a number of factors including: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; the applicable Sentencing Guidelines range; and the need to avoid

---

[7] The BOP website reveals that McCreary USP has had over 100 COVID cases. *See* Bureau of Prisons, *COVID-19 Coronavirus* https://www.bop.gov/coronavirus (last visited Jan. 2, 2021).

unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a).

Defendant argues these sentencing factors support release because he has served a substantial portion of his sentence; was compliant with release conditions while awaiting sentence; has had no disciplinary actions while in BOP custody; and has plans to live with his mother and obtain employment upon release.

The Government argues Defendant should complete service of his 24-month sentence based on the need to protect the public from further crimes, the need for deterrence, ensuring just punishment, and promoting respect for the law. The Government points out that, before apprehension for the offense of conviction, Defendant fled from police while carrying a large amount of heroin, cash, and a gun.

*Nature and Circumstances of the Offense*. According to the "Factual Basis" section of the Plea Agreement describing the offense of conviction, Defendant fled from police, and before he was apprehended, discarded a bag carrying a large amount of heroin, a fully-loaded firearm, and thousands of dollars in cash. Other evidence seized from the apartment where Defendant was staying included drug trafficking paraphernalia and a second firearm.

*History and Characteristics of the Defendant*. Defendant is 27 years old. He reported, through the PSR, a relatively stable childhood, but also a history of alcohol and marijuana use. He also reported that he has suffered from asthma since childhood, and uses an inhaler, as needed, to treat the condition. Defendant has had a sporadic employment history.

6

According to the PSR, Defendant has had two prior convictions: one for drug trafficking, and one for aggravated criminal trespass involving a former girlfriend. Defendant was on probation when he committed the offense of conviction.

*Sentencing Guidelines Range.* With a total offense level of 25 and a Criminal History Category of III, the applicable Sentencing Guidelines range was 70-87 months of imprisonment, but based on the Plea Agreement, Defendant was sentenced well below the guideline range. The Plea Agreement also allowed Defendant to avoid a statutory mandatory minimum sentence with the Government's agreement to dismiss the Section 924(c) charge.

Given the nature of Defendant's offense of conviction, and the substantial reduction from the applicable guideline range he has already received as part of his sentence, and having considered all the factors listed in Section 3553(a), the Court concludes that a sentence of "time-served" – in this case, approximately 18 months of a 24-month sentence – is not sufficient. A time-served sentence would undermine the need to promote respect for the law, the need to afford adequate deterrence, and the need for the sentence imposed to reflect the seriousness of the offense. Accordingly, Defendant's request for compassionate release (Doc. No. 89) is **DENIED**.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE